ISHAM S. BROWN, et al. plaintiffs in error, vs. EDWIN B. SOCKWELL, defendant in error.

[1.] A memorandum not made by the party against whom it is offered in evidence, it not appearing by whom or upon what authority made, ought not to be admitted.

[2.] In a suit by heirs at law for the recovery of their portion of a share of an estate, paid into the hands of another for the heirs entitled, the claimants cannot be required to show that there were no creditors of the estate, from which the share was received: The presumption of law is, that there are none, and the defendant, if he raises the objection, must prove it.

[3.] A step-father cannot make his step-children debtors to him for their support and maintenance. If he voluntarily supports them, they having no estate or a very small estate, he cannot, upon his voluntary act, raise a demand against them, he being neither administrator, executor or guardian, nor engaged to support them by executor, administrator or guardian.

In equity, in Carroll Superior Court. Tried before Judge HAMMOND, at April Term, 1858.

This bill was filed by Isham S. Brown, in right of his wife; Thomas S. Treadwell in right of his wife; and John T. McIntosh, complainants, against Edwin B. Sockwell.

The bill states, that sometime about 1847, James Head of Carroll county, departed this life intestate, possessed of a considerable estate, both real and personal, and leaving eleven heirs at law; being his children or the descendants of deceased children. That the mother of complainants was one, the present wife of Edwin B. Sockwell the defendant; that her first husband was Jesse D. McIntosh, and the wives of complainants Brown and Treadwell, and complainant John T. McIntosh are her children by her first husband; that she after McIntosh's death, but before the death of her father, married Sockwell, by whom she had four children living at the time of her father's death. The heirs, without administration, paid the debts of deceased, and by agreement divided the estate, and Edwin B. Sockwell received one full share in right of his wife and her children. At the time of this division, Brown and wife resided in the State of Mississippi, and Mrs. Treadwell and John T. McIntosh resided with their step-father, the defendant, being minors under the age of twenty-one.

That Sockwell never informed complainants that he had received their share of their grandfather's estate, but fraudulently concealed the fact from them, and that it was only a few months before the filing of this their bill, that they had discovered, that he had so received it. The bill claimed that complainants, each, were entitled to one-eighth of the share, or amount received by Sockwell, upon said division, and prayed that he account for and pay over the same, with interest thereon from the period of the division, which was in 1849.

The defendant's answer admitted that he married Mrs.

McIntosh, the mother of complainants, and daughter of James Head, as stated in the bill; and that at the death of said James, he had by his said wife four children living. He denied that he ever received any portion or share of the estate of deceased, in trust, for or on behalf of the complainants, or in any other way for them or on their account. Admits the division of James Head's estate by the heirs, as stated in the bill of complainants, but states that at said division, he received only a part of the share due and coming to his wife. The share of each was $829 19. He received only $485 20. The balance $343 99, although included in his receipt, was not in fact paid to, or received by him, but was received by his wife's first husband.

Defendant denied all fraud or fraudulent concealment.

Defendant further insisted, that complainants were indebted to him large sums for board, clothing and schooling, and which he set up as a set-off to their claim against him.

Upon the trial, complainants introduced in evidence the following receipt to-wit:

"Received of the legatees of James Heard, late of said county, eight hundred and twenty-nine dollars and nineteen cents in part of share of said estate. This 4th January, 1849.

    (Signed,)               E. B. SOCKWELL.

Complainants, further proved that defendant had received one hundred and twenty-five dollars, for a portion of a lot of land belonging to intestate, sold by defendant to one Oliver G. Barron. They further proved that upon the division of James Head's estate, defendant received the full one-eleventh share thereof, in right of his wife.

Defendant offered in evidence a copy of the above receipt, on which was the following memorandum. " *Copy of amount given at division*, $343 99." Complainants objected to the introduction in evidence of this copy receipt, and memorandum. Defendant then proved, that the copy receipt was in the hand-writing of Henry M. Head. That he, defendant, had asked Head for a copy of the receipt, and that he had

given him the one now offered.   The Court ruled out the copy receipt, but allowed the memorandum to go to the jury. To which ruling complainants excepted.

Defendant proved what was the worth of the board, cloth-ing and schooling of complainants before they were large enough to work.

The Court charged the jury that the law presumed that the estate of James Head, deceased, was in debt, and that before complainants could maintain their suit, it must ap-pear affirmatively, that the debts were all paid.   To which charge, counsel for complainants excepted.

Counsel for defendant asked the Court to charge the jury, that if they believed from the evidence, that complainants lived with defendant, before he received their part of said estate, that then his set-off for board, &c. became a debt against them, and that he had a right to appropriate not on-ly the interest but the principal of the amount they claimed in payment of said debt.   Which charge the Court gave; and complainants excepted.

The jury found for the defendant.   Whereupon complain-ants moved for a new trial upon the following grounds:

1st. The ruling and decision of the Court admitting in evidence the memorandum on the copy receipt.

2d. The charge of the Court, that the law presumed that the estate of deceased was in debt, and that before complain-ants could maintain their suit, it must affirmatively appear that there were no debts.   And the further charge that de-fendant had the right to appropriate the principal and inter-est of the sum claimed by complainants to the payment of a debt for board, &c. due by them.

3d. That the jury found contrary to law and evidence.

The Court refused the motion for a new trial, and com-plainants excepted.

WILLIAM J. HEAD, for plaintiffs in error.

BUCHANAN, contra.

By the Court.—MCDONALD, J. delivering the opinion.

Lucinda Sockwell, the wife of Edwin B. Sockwell, was the daughter of James Head. She was twice married. She first intermarried with Jesse D. McIntosh, by whom she had three children : John T. McIntosh, Margaret, the wife of Isham S. Brown, and Sarah Daniel, the wife of Thomas S. Treadwell. Jesse D. McIntosh having died, she married the defendant Edwin B. Sockwell, by whom also she had children. After the second marriage, and the birth of several children, James Head, the father of Mrs. Sockwell, died intestate. There was no administration on his estate. The heirs at law agreed to distribute the estate without an administration. At the distribution the defendant Edwin B. Sockwell received the whole share to which his wife and her children of both marriages were entitled under the Act of 1845. The complainants, children of the first marriage, bring this suit for the recovery of their part of the share received by the defendant.

The defendant in his answer denies that he received the shares of the complainants in the estate of the said James Head, on the contrary, he says, he did not receive the full share coming to his wife, that he gave a receipt for a larger sum than actually came to his hands. The defendant insists in his answer, that he is not accountable to the complainants, but that they must look to the administrator of their deceased father's estate, and he claims an allowance for board, clothing and other necessaries furnished the complainants during their minority.

[1.] The complainants, at the hearing of the cause, gave in evidence the defendant's receipt for the amount received by him at the division of the estate. The defendant offered

in evidence a copy of the same receipt, together with a memorandum entered thereon as follows: " Copy of amount given at division $343 99." The counsel for the complainants demurred to this evidence. The Court rejected the copy receipt, but admitted the memorandum. The decision of the Court admitting the memorandum is excepted to. It does not appear that there is any memorandum to the original receipt or that there ever was such a memorandum attached to it; nor does it appear in whose hand writing it was made. There is certainly no reason why it should have been received as evidence to bind the complainants. It does not appear that it was not made by the defendant himself. The defendant is certainly not accountable for more than the complainant's portion of the amount which came to his hands, either in money, property, or his own debt to the estate of the intestate Head, but that memorandum is no proof, as the case is presented in the record before us, that the sum mentioned therein did not come to his hands.

On the finding of the jury for the defendant, a motion for a new trial was submitted by counsel for the complainants, which was refused by the Court, and the decision of the Court on that motion is excepted to. The admission of the memorandum in evidence which is made the first ground in the motion, has already been disposed of, and on that ground the motion ought to have been granted.

[2.] We think that the Court erred in its charge to the jury, that the law presumed that the estate was in debt, and that before complainants could maintain their suit, it must affirmatively appear that there were no debts. The estate was distributed without administration, and we hear of no objection on the part of creditors. But the defendant received the amount in his hands as the distributive share of one of the heirs at law of the intestate, viz : the share to which his wife would have been entitled if she had remained single, or had had no child after marriage. By law, that share was divisible among herself and children, born at the time of

the death of the ancestor from whom it was inherited. For them, therefore, it was received and held in trust, and no creditor had any interest therein. It is true, that if there had been creditors, they would have had the right to pursue the assets, but it cannot be an objection to the defendant's responding to those for whose special benefit he held the property, that there may be creditors who have a right to pursue the effects. It was for him to show, not only that there were creditors, but that they had notified him of their claims.

[3.] The Court further charged the jury that the defendant had the right to appropriate the principal and interest of the sum claimed by complainants, to the payment of a debt for board, &c. due by them. The defendant had married the mother of complainants, who had little property. They were then small, and continued to live with their mother and stepfather, who fed, clothed and gave them what schooling they got. It does not appear that they had a patrimony capable of supporting or educating them. It did not exceed the fourth-part of one hundred and forty dollars to each, and whatever it was, passed to the hands of the defendant. He was neither their guardian nor the administrator of their deceased father's estate. If he had been either, he could not have expended more than the income in their maintenance and education. This is the inference from the statute. If the income was not sufficient for that purpose, the Court ought to have bound them out. *Freeman and wife vs. Tucker*, 20 *Ga. Rep.* 9. There is very strong authority for saying that if a widow having children, marry again, and was of sufficient ability before the second marriage to support them, the husband shall be charged to maintain them, 1 *Black. Com.* 440. I believe, however, that the reason of the thing is against this, as well as the more recently adjudicated cases, 4 *Tenn. Rep.* 118. But the defendant, I apprehend, cannot be in a better situation than if he had been the guardian of complainants. A guardian cannot encroach upon the capital of his ward for his maintenance and education, nor can

Brown et al. vs. Sockwell.

he or any one else make him his debtor against his will. He certainly would not without request, involve him in debt so as to consume any estate which he might subsequently acquire. The maxim, that once a gratuity, always a gratuity, applies with all its force to such a case. If the complainants, on attaining majority had promised to pay the expenses of the defendant, their step-father, in their maintenance and education, without fraud, imposition, or improper influence, that he did incur expenses for these objects, would be a sufficient consideration to support an action. *Cooper vs. Martin,* 4 *East.* 82. There is no evidence of a promise in this case. By a late statute in England, passed, in the reign of William 4th, every husband is made liable to maintain the children of his wife, born before his marriage with her, whoever was their father, and whether the children are legitimate or illegitimate, until the children attain the age of sixteen years, or until their mother's death. We have no such statute here, and I think that by the construction of our statutes, whenever an infant is entitled to an estate, the income of which is sufficient for his maintenance and education, he is responsible for such expenses, when contracted in a regular way by executor, administrator or guardian; that if the income of his estate is incompetent to his support during his minority, he should be bound out, and that for expenses gratuitously incurred by others, for him, he is not legally liable.

The judgment of the Court below ought, we think, to be reversed and a new trial granted, on the two first grounds taken in the motion.

Judgment reversed.