S11G1047. CARDINALE v. CITY OF ATLANTA et al.
(722 SE2d 732)

HUNSTEIN, Chief Justice.

Appellant Matthew Cardinale, pro se, brought an action in the trial court against appellees the City of Atlanta (the "City"), the President and seven members of the Atlanta City Council (the "Council"), and the City's Municipal Clerk alleging violations of Georgia's Open Meetings Act, OCGA § 50-14-1 et seq. (the "Act"). Cardinale alleges that the minutes of a Council meeting in February 2010 omitted certain information concerning the outcome of a non-roll-call vote in violation of OCGA § 50-14-1 (e) (2), namely the names of Council members who voted, in the minority, to amend rather than maintain certain Council rules. The trial court dismissed Cardinale's complaint, and the Court of Appeals affirmed, concluding that the language of the Act does not support Cardinale's claims. *Cardinale v. City of Atlanta*, 308 Ga. App. 234 (706 SE2d 692) (2011). We granted certiorari to consider whether the Court of Appeals erred

---

[2] The trial court also required husband to indemnify wife and hold her harmless for debts he was ordered to pay.

in interpreting OCGA § 50-14-1 (e) (2) to allow minutes of an agency meeting to omit the names of persons voting against a proposal or abstaining when the vote is not taken by roll-call and is not unanimous. Finding that the Court of Appeals erred in its interpretation of the Act, we reverse in part and conclude that only that portion of Cardinale's complaint seeking to impose criminal liability upon the individual defendants was properly dismissed.

Cardinale's complaint alleges as follows: The Council held its annual elected official retreat at the Georgia Aquarium on February 18 and 19, 2010. The retreat was a meeting required to be open to the public under the Act. See OCGA § 50-14-1 (a)-(c). On the second day of the retreat, the Chair of the Council's Committee on Council ("COC") polled Council members to determine whether they were in favor of amending the existing rules governing public comment at Council committee meetings. By show of hands, seven Council members voted in favor of amending the current rules while eight members voted to maintain the existing rules. The minutes of the retreat, however, state only that "[a]fter an extensive discussion it was determined that the membership was not in support of amending the existing law." After obtaining a copy of the minutes, Cardinale requested on several occasions that the minutes be amended to include further vote details. In response, Cardinale received a memo authored by the City's law department opining that in the case of a non-roll-call vote, the Act "does not require that the names of each Council member voting for and against the proposal be recorded in the minutes." Cardinale then attempted to poll Council members regarding their votes. Six members did not disclose their votes; two disclosed voting to amend the existing rules; and seven disclosed voting to maintain the existing rules.

Cardinale's complaint challenges the minutes' compliance with the Act; the Council's refusal to amend the minutes; and the failure of some Council members to disclose their votes. The complaint seeks declaratory and injunctive relief and requests that the trial court impose a $500 fine on the individual defendants[1] and "charge each with misdemeanors." See OCGA § 50-14-6.

We review the dismissal of a complaint for failure to state a claim upon which relief can be granted de novo, *Southstar Energy Svcs., LLC v. Ellison*, 286 Ga. 709 (1) (691 SE2d 203) (2010), construing the complaint in the light most favorable to the plaintiff and resolving all doubts in the plaintiff's favor. *DeKalb County v. State*, 270 Ga. 776 (2)

---

[1] The individual defendants are the Council President, the City Municipal Clerk, the Council members who did not disclose their votes, and the COC Chair.

(512 SE2d 284) (1999). A motion to dismiss for failure to state a claim

> should not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought. [Cit.]

(Punctuation omitted.) *Stendahl v. Cobb County*, 284 Ga. 525, 525 (1) (668 SE2d 723) (2008).

Pursuant to OCGA § 50-14-1 (e) (2), the minutes of a meeting required to be open to the public "shall be promptly recorded and . . . shall be open to public inspection once approved as official by the agency," and

> [s]aid minutes shall, as a minimum, include the names of the members present at the meeting, a description of each motion or other proposal made, and a record of all votes. In the case of a roll-call vote the name of each person voting for or against a proposal shall be recorded and in all other cases it shall be presumed that the action taken was approved by each person in attendance unless the minutes reflect the name of the persons voting against the proposal or abstaining.

As an initial matter, we disagree with appellees' argument that the Court need look no further than the plain statutory language to reject Cardinale's contention that recording the names of those voting against a proposal or abstaining in the case of a non-roll-call vote is mandatory. See *Chase v. State*, 285 Ga. 693, 695 (2) (681 SE2d 116) (2009) ("where the language of a statute is plain and unambiguous, judicial construction is not only unnecessary but forbidden.") (punctuation and footnote omitted). Appellees maintain, and the dissent agrees, that the statute clearly provides that the result of a non-unanimous, non-roll-call vote must be presumed unanimous unless the agency *chooses* to record the names of those voting against the proposal or abstaining. What appellees and the dissent ignore is that OCGA § 50-14-1 (e) (2) nowhere explains how the names of those voting against a proposal or abstaining in the case of a non-roll-call vote will come to appear in the minutes. The statute is simply silent regarding whether listing these names is optional or mandatory, and as such, there is no merit to the contention that the

construction of OCGA § 50-14-1 (e) (2) advocated by appellees and adopted by the dissent follows from the plain terms of the statute.

To resolve the issue of statutory construction presented by this appeal, we begin with the cardinal rule that requires us to "ascertain the legislative intent and purpose in enacting the law, and then to give it that construction which will effectuate the legislative intent and purpose. [Cit.]" (Punctuation omitted.) *Carringer v. Rodgers*, 276 Ga. 359, 363 (578 SE2d 841) (2003). We must "consider the consequences of any proposed interpretation and not construe the statute to reach an unreasonable result unintended by the legislature." (Citation and punctuation omitted.) *Haugen v. Henry County*, 277 Ga. 743, 745 (2) (594 SE2d 324) (2004).

As we have explained, the Act "was enacted in the public interest to protect the public — both individuals and the public generally — from 'closed door' politics and the potential abuse of individuals and the misuse of power such policies entail." (Citation and punctuation omitted.) *EarthResources, LLC v. Morgan County*, 281 Ga. 396, 399 (3) (638 SE2d 325) (2006); *Red & Black Pub. Co., Inc. v. Board of Regents*, 262 Ga. 848, 852 (3) (427 SE2d 257) (1993); *Atlanta Journal v. Hill*, 257 Ga. 398, 399 (359 SE2d 913) (1987). The Act also reflects a policy "that the public's business must be open, not only to protect against potential abuse, but also to maintain the public's confidence in its officials. [Cit.]" *Red & Black Pub. Co.*, supra, 262 Ga. at 854 (3). While the Act provides for public access to agency meetings, it also fosters openness by, among other things, requiring agencies to generate meeting minutes that are open to public inspection so that members of the public unable to attend a meeting nonetheless may learn what occurred. See OCGA § 50-14-1 (e) (2).

We hold that in view of the General Assembly's intent, the correct reading of OCGA § 50-14-1 (e) (2), and the one that is most natural and reasonable, is that, having first mandated that meeting minutes include a "record of all votes," the subsection then sets forth alternative requirements for accurately recording individuals' votes in the case of both roll-call and non-roll-call votes. In the case of a non-roll-call vote, the minutes must list the names of those voting against a proposal or abstaining. If no such names are listed, the public may correctly presume that the vote was unanimous. If such names are listed, a member of the public need only look at the list of voting officials in attendance at the meeting to determine who voted for a proposal.

To adopt a contrary holding that agencies possess discretion to decline to record the names of those voting against a proposal or abstaining in the case of a non-roll-call vote would potentially deny non-attending members of the public access to information available

to those who attended a meeting. Such a result conflicts with the Act's goal of greater governmental transparency. Further, under appellees' proposed construction, OCGA § 50-14-1 (e) (2) requires a presumption that a non-roll-call vote is unanimous even when it is not if the agency elects not to record the names of those voting against a proposal or abstaining. Construing the statute to mandate a presumption contrary to fact would produce unreasonable results. We cannot conclude that the General Assembly intended to require members of the public to presume, incorrectly, that a non-unanimous, non-roll-call vote was, in fact, unanimous or intended that such a presumption govern even if some members of the public know from attending the meeting or otherwise that the vote was split. Nor can we conclude that the General Assembly, within a statute promoting open government, intended to provide that an agency could decide on an arbitrary basis to avail itself of such a presumption and thereby obscure the nature of individuals' votes. Construing OCGA § 50-14-1 (e) (2) to allow for a presumption that is contrary to fact would generate confusion (and possibly mistrust) rather than public confidence and transparency in government.[2]

Appellees fail to present any argument that the interpretation of OCGA § 50-14-1 (e) (2) they propose is consistent with or advances the Act's goals. Instead, like the Court of Appeals, they rely on the rule of statutory construction that courts should avoid an interpretation of a statute that renders some language mere surplusage. See *Slakman v. Continental Cas. Co.*, 277 Ga. 189, 191 (587 SE2d 24) (2003). Appellees contend that construing OCGA § 50-14-1 (e) (2) to require recording the names of those voting against a proposal or abstaining in the case of a non-roll-call vote, thereby allowing the public to determine how each person voted, would undermine the General Assembly's intent "to require this type of detailed voting information only for roll-call votes" and negate the distinction the General Assembly drew between roll-call and non-roll-call votes. We disagree. A meaningful distinction still exists. While, in both cases, the record will accurately disclose individuals' votes, in the case of a non-roll-call vote, the administrative burden of recording the vote is reduced, as only the names of those voting against a proposal or abstaining must be listed.

Finally, our construction of OCGA § 50-14-1 (e) (2), by favoring

---

[2] Citing *Flint River Mills v. Henry*, 239 Ga. 347 (236 SE2d 583) (1977), appellees argue that the General Assembly had constitutional authority to create a conclusive statutory presumption in OCGA § 50-14-1 (e) (2) that a non-unanimous, non-roll-call vote was unanimous. This argument is inapposite. The issue here is not whether the General Assembly is authorized to create a presumption contrary to fact but whether it did so in OCGA § 50-14-1 (e) (2).

transparency and accuracy in meeting minutes, is consistent with our repeated admonitions that the Act must be broadly construed to effectuate its remedial purposes. See, e.g., *EarthResources, LLC*, supra, 281 Ga. at 399 (3); *Atlanta Journal*, supra, 257 Ga. at 399. Appellees nonetheless contend that we are, instead, obliged to narrowly and strictly construe the Act. Assuming arguendo that applying a rule of strict construction would lead us to construe the Act in a manner inconsistent with legislative intent, we disagree. Appellees first maintain that the Act must be strictly construed because it is a civil statute in derogation of common law. See *Denton v. Browns Mill Dev. Co., Inc.*, 275 Ga. 2, 4, n. 1 (561 SE2d 431) (2002). Contrary to appellee's argument, a statute that is remedial in nature nonetheless may be subject to a broad or liberal construction though in derogation of common law. See *King v. State*, 246 Ga. 386 (7) (271 SE2d 630) (1980) (judicial recusal statute); *CGU Ins. Co. v. Sabel Indus., Inc.*, 255 Ga. App. 236 (2) (564 SE2d 836) (2002) (Workers' Compensation Act). Next, contradicting their characterization of the Act as a *civil* statute, appellees argued for the first time at oral argument that because the complaint requests that the trial court charge the individual defendants with misdemeanors and impose a fine of $500 on each of them under OCGA § 50-14-6, the Act is a criminal statute that must be strictly construed against Cardinale.[3] The fact that the Act contains a penal provision does not render the entire statute penal in nature such that all of its provisions must be strictly construed. See *Board of Public Instruction of Broward County v. Doran*, 224 So2d 693, 699 (Fla. 1969) (penal provision of Florida sunshine law did not make entire statute penal); *Laman v. McCord*, 432 SW2d 753, 755 (Ark. 1968) (provision of Arkansas Freedom of Information Act making a willful violation a misdemeanor did not make entire statute penal).

At most, only OCGA § 50-14-6 is subject to a strict construction. See *Franks v. Avila*, 200 Ga. App. 733 (2) (409 SE2d 564) (1991) (although Workers' Compensation Act is liberally construed to effect its beneficent purposes, section providing penalties against employers is subject to strict construction). We need not apply a rule of strict construction to determine that Cardinale's attempt to invoke OCGA § 50-14-6 fails because, as a private citizen, he lacks standing to initiate a criminal prosecution. See *Bartlett v. Caldwell*, 265 Ga. 52 (452 SE2d 744) (1995); *Roberts v. State*, 280 Ga. App. 672, 674 (634 SE2d 790) (2006). As such, the portion of the complaint seeking to

---

[3] OCGA § 50-14-6 states that "[a]ny person knowingly and willfully conducting or participating in a meeting in violation of this chapter" is guilty of a misdemeanor and subject to a fine "not to exceed $500.00."

impose criminal liability on the individual defendants was properly dismissed. Cardinale's complaint, however, states claims for declaratory and injunctive relief under OCGA § 50-14-5 (a) based upon appellees' alleged violations of OCGA § 50-14-1 (e) (2).

*Judgment affirmed in part and reversed in part. All the Justices concur, except Carley, P. J., Benham and Melton, JJ., who dissent.*

MELTON, Justice, dissenting.

I cannot agree with the majority's refusal to follow the plain language of OCGA § 50-14-1. *Slakman v. Continental Cas. Co.*, 277 Ga. 189, 191 (587 SE2d 24) (2003) ("[T]he fundamental rules of statutory construction . . . require us to construe a statute according to its terms, to give words their plain and ordinary meaning, and to avoid a construction that makes some language mere surplusage") (citations omitted). The plain language of OCGA § 50-14-1 (e) (2) makes clear that the minutes of an agency meeting need not include the names of persons voting against a proposal or abstaining when the vote is not taken by roll-call. I therefore respectfully dissent.

OCGA § 50-14-1 (e) (2) states in relevant part that the minutes of a meeting required to be open to the public

> shall, *as a minimum*, include the names of the members present at the meeting, a description of each motion or other proposal made, and a record of all votes. *In the case of a roll-call vote* the name of each person voting for or against a proposal shall be recorded and *in all other cases* it shall be presumed that the action taken was approved by each person in attendance unless the minutes reflect the name of the persons voting against the proposal or abstaining.

(Emphasis supplied.) The first sentence of the statute makes clear that, at a minimum, the minutes of a meeting need only include "the names of the members present at the meeting, a description of each motion or other proposal made, and a record of all votes." Id. There is nothing in the first sentence of the statute to indicate that the record of votes taken at every meeting must include a breakdown of the names of persons voting against a proposal or abstaining from a vote. However, the statute specifically goes on to state that, *"[i]n the case of a roll-call vote* the name of each person voting for or against a proposal shall be recorded." (Emphasis supplied.) Id. *"[I]n all other cases,"* ostensibly those that do not involve a roll-call vote, "it shall be presumed that the action taken was approved by each person in attendance unless the minutes reflect the name of the persons voting against the proposal or abstaining." (Emphasis supplied.) Id. Thus, in the case of a roll-call vote, the minutes must include the name of

each person voting for or against a proposal. However, in all other cases, a presumption exists that an action was approved by unanimous vote unless the minutes reflect otherwise. In short, while an agency is required to include in the minutes the name of each person who voted for or against a proposal in the case of a roll-call vote, in all other cases it has the *option* of including in the minutes the names of the individuals who voted against a proposal or abstained from voting, but it is not *required* to do so.

There is nothing complicated or unreasonable about this straightforward interpretation of the statute. Nor is the presumption of a unanimous vote for approved actions in non-roll-call cases something that the Legislature was not authorized to include in the statute. See, e.g., *Flint River Mills v. Henry*, 239 Ga. 347 (236 SE2d 583) (1977) (even where workers' compensation statute as written could create presumption of dependency where actual facts of case were contrary to the presumption, statute was constitutional). Given the Legislature's clear authority to enact OCGA § 50-14-1 (e) (2) in exactly the way that it was written and the fact that there is nothing confusing or ambiguous about the simple terms used in the statute, we must construe the statute according to its plain terms. I therefore must respectfully dissent from the majority's insistence on interpreting OCGA § 50-14-1 (e) (2) in a manner that is directly contrary to its plain and unambiguous language.

I am authorized to state that Presiding Justice Carley and Justice Benham join in this dissent.

DECIDED FEBRUARY 6, 2012.

Matthew Cardinale, *pro se.*

*Amber A. Robinson, Kristen E. Brooks, Cathy Hampton*, for appellees.

*Samuel S. Olens, Attorney General, Dennis R. Dunn, Deputy Attorney General, Stefan E. Ritter, Senior Assistant Attorney General, Stuckey & Manheimer, Hollie G. Manheimer, Gerald R. Weber, Jr.*, amici curiae.